UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| RODENTPRO.COM, LLC d/b/a ) | | |
| RODENTPRO.COM, ) | | |
|     Plaintiff, ) | | |
| ) | | |
| vs. ) | 3:06-cv-81-RLY-WGH | |
| ) | | |
| BIGGERS & CALLAHAM, LLC d/b/a MICE ) | | |
| DIRECT, ) | | |
|     Defendant. ) | | |

**ENTRY ON DEFENDANT'S MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION**

Plaintiff, Rodentpro.com, LLC d/b/a Rodentpro.com ("Rodentpro.com") brings this trademark infringement suit against Biggers & Callaham, LLC d/b/a Mice Direct ("Mice Direct"). Mice Direct now moves to dismiss this case for want of personal jurisdiction. For the reasons set forth below, the court **GRANTS** its motion.

**I.    Motion to Strike**

Before addressing the factual background, the court must first address what evidence is admissible for purposes of this motion. The court will first address Mice Direct's motion to strike certain portions of the Affidavit of Kevin Bryant.

Mice Direct objects to paragraphs 3, 4, 8, 12, and 13 of the Affidavit of Kevin Bryant. Mice Direct contends that paragraphs 3 and 13 of Mr. Bryant's affidavit are inadmissible as they contain statements not based upon Mr. Bryant's personal knowledge and lack an adequate foundation. In paragraph 3, Mr. Bryant avers that prior to November 16, 2004, Mice Direct did not use the terms "rodentpro" and/or "rodent professional" in any of its

advertisements or website text, and in paragraph 13, he avers that Mice Direct did not use those terms in "any of its website, text or trade magazine advertising until after [he] refused to engage in price fixing with [Mice Direct]." The court agrees with Mice Direct that Mr. Bryant lacks personal knowledge and fails to provide an adequate foundation to testify to those matters. Thus, the court strikes paragraphs 3 and 13 of Mr. Bryant's affidavit. Mice Direct also objects to those portions of paragraphs 4, 8, and 12 of Mr. Bryant's affidavit which contain inadmissible legal conclusions and/or irrelevant opinions. In paragraph 4, Mr. Bryant avers that Mice Direct is "[unable] to legitimately compete with Rodentpro." In paragraph 8, Mr. Bryant alleges that Mice Direct "continued its tortuous behavior by placing misleading advertisements." And in paragraph 12, Mr. Bryant alleges that "[Mice Direct] has engaged in a systematic campaign of infringing upon Rodentpro's trademark registration." The court agrees with Mice Direct that the statements made by Mr. Bryant in paragraphs 4, 8, and 12 contain inadmissible legal conclusions and/or irrelevant opinions. Thus, the court strikes paragraphs 4, 8, and 12 from its purview.

In addition, the court *sua sponte* strikes Rodentpro.com's surreply. First, Local Rule 7.1 does not contemplate the filing of surreply briefs. Thus, in order to file a surreply, a party must seek leave of court. Rodentpro.com failed to do so. Moreover, a surreply is only allowed if "in reply, the moving party relies upon evidence not previously cited or objects to the admissibility of the non-moving party's evidence." In that circumstance, "the non-moving party may file a surreply brief limited to such new evidence and objections, no later than seven days after service of the reply brief." S.D. Ind. L. R. 56.1(d) (citing the rule as regards summary judgment procedure). Rodentpro.com's surreply did not reply to any new

evidence or arguments.  Accordingly, the court will not consider Rodentpro.com's surreply for purposes of this motion.

**II.     Facts**

Rodentpro.com and Mice Direct are competitors in the business of selling rodents to owners of reptiles and birds of prey.  (Declaration of John Callaham ("Callaham Dec.") ¶ 5).  Rodentpro.com is a limited liability company with its principal place of business in Evansville, Indiana.  (Affidavit of Kevin Bryant ("Bryant Aff.") ¶ 15).  Since 2001, Rodentpro.com has been marketing its goods and services under the trademark "RODENTPRO.COM."  (Bryant Dec. ¶ 2).  Kevin Bryant is its manager.  (Bryant Aff. ¶ 1).

Mice Direct is a limited liability company with its principal place of business in Cleveland, Georgia.  (Callaham Dec. ¶ 3).  Mice Direct is a small company and employs only independent contractors.  (Callaham Dec. ¶ 4).  Mice Direct does not do business in Indiana, has never made a sale in Indiana, and has no employees, offices, or property in Indiana.  (Callaham Dec. ¶¶ 6-9).  Mice Direct operates the website micedirect.com.  (Callaham Dec. ¶ 11).

On November 16, 2004, John Callaham, President of Mice Direct, placed a telephone call to Kevin Bryant, Manager of Rodentpro.com, at Rodentpro.com's offices in Indiana.  (Bryant Dec. ¶ 5).  During that conversation, Mr. Callaham attempted to convince Mr. Bryant to raise Rodentpro.com's prices.  (Callaham Dec. ¶ 6).  Mice Direct also placed advertisements regarding the quality of Rodentpro.com's rodents it offered for sale on a third-party web forum.  (Bryant Dec., Ex. A).  Those advertisements were promptly removed by the web forum after Mr. Bryant informed the web forum of their misleading nature.

(Bryant Dec. ¶ 9). The following day, Mr. Callaham sent Mr. Bryant an e-mail informing Mr. Bryant that he was aware of the fact that Rodentpro.com advertised that they sold farm-raised rodents, but that in actuality, Rodentpro.com also sold laboratory surplus rodents. (Bryant Dec., Ex. A). He stated that if Rodentpro.com did not raise their prices, Mice Direct would inform the public of Rodentpro.com's misleading practices. (Bryant Dec., Ex. A).

On March 20, 2006, Rodentpro.com sent Mice Direct a letter notifying them of their allegedly infringing behavior and demanding them to cease and desist from any further use of Rodentpro.com's trademark. (Complaint ¶ 22). Mice Direct did not respond to the letter. (Complaint ¶ 23).

On May 12, 2006, Rodentpro.com brought the instant lawsuit for, *inter alia*, trademark infringement, unfair competition, and trade dress infringement.

### III.  Jurisdictional Standard

Mice Direct has moved to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(2). When a defendant challenges jurisdiction, the plaintiff bears the burden of proving that personal jurisdiction exists. *Central States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 939 (7th Cir. 2000). Because neither party sought an evidentiary hearing on this matter, the plaintiff "need only make out a prima facie case of personal jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (citing *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). The court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual disputes regarding relevant facts in the plaintiff's favor. *Purdue Research Found.*,

38 F.3d at 782; *John Walker and Sons, Ltd. v. DeMert & Dougherty, Inc.*, 821 F.2d 399, 402 (7th Cir. 1987).

The determination of personal jurisdiction requires a two-step inquiry: (1) whether the defendant falls within Indiana's long-arm statute; and (2) whether the exercise of jurisdiction over the defendant comports with the requirements of federal due process. *Purdue Research Found.*, 338 F.3d at 779.

Indiana Trial Rule 4.4(A) serves as Indiana's long-arm statute, and provides that "a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States." *Richards and O'Neil, LLP v. Conk*, 774 N.E.2d 540, 550 n. 6 (Ind. Ct. App. 2002); Ind. Trial R. 4.4(A). Accordingly, "the first prong of the inquiry collapses into the second prong, and the only issue is whether the exercise of jurisdiction over [the defendant] comports with federal due process." *Litmer v. PDQUSA.com*, 326 F.Supp.2d 952, 955 (N.D. Ind. 2004).

The Due Process Clause requires that a defendant not present within the territory of the forum have certain minimum contacts with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). In addition, such "minimum contacts" with the forum state must be purposeful and create a "substantial connection" with the forum state. *See Burger King Corp. v. Rudkewicz*, 471 U.S. 462, 474 (1985).

Specific jurisdiction exists when the litigation arises out of the defendant's contacts with the forum.[1]  Specific jurisdiction comports with the Due Process Clause where the defendant's contacts with the forum are such that the defendant "should reasonably anticipate being haled into court" in that state "because the defendant has 'purposefully avail[ed] itself of the privilege of conducting activities' there."  *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (quoting *Burger King*, 471 U.S. 474-75).  "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts."  *Burger King*, 471 U.S. at 475 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)).

**IV.    Discussion**

Rodentpro.com contends the court has specific personal jurisdiction over Mice Direct pursuant to the "effects test" for specific personal jurisdiction first enunciated by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984), and later applied by the Seventh Circuit in *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997); *Indianapolis Colts, Inc. v. Metro. Baltimore Football Club Ltd.*, 34 F.3d 410, 411-12 (7th Cir. 1994).  These cases require that a defendant explicitly "direct" its tortious or harmful activities at the plaintiff in the forum state before jurisdiction can be found.

In support of Rodentpro.com's position, it cites to a Ninth Circuit opinion entitled *Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998).  In that case, Panavision, a California corporation, filed suit against Toeppen, an Illinois resident, for dilution of its

---

[1] Plaintiff does not argue that the court has general jurisdiction over Mice Direct.

trademarks. Toeppen developed the practice of acquiring domain names, and in so doing, acquired a domain name in Panavision's trademark, "Panavision." Toeppen offered to "settle" the matter if Panavision paid him $13,000. After Panavision refused, Toeppen registered Panavision's other trademark, "Panaflex," as a domain name. Panavision later filed suit against Toeppen in California for dilution of its trademarks. The district court held that Toeppen was subject to suit in California under the "effects doctrine." In affirming the district court, the Ninth Circuit reasoned:

> Toeppen engaged in a scheme to register Panavision's trademarks as his domain names for the purpose of extorting money from Panavision. His conduct, as he knew it likely would, had the effect of injuring Panavision in California where Panavision has its principal place of business and where the movie and television industry is centered. Under the 'effects test,' the purposeful availment requirement necessary for specific jurisdiction is met.

*Id*. at 1322. The court then found that the second requirement for specific jurisdiction was also met, as "Panavision's claims arise out of Toeppen's California-related activities." *Id*.

Rodentpro.com contends that the facts of its case are similar to those in *Panavision*. Rodentpro.com cites to the November 16, 2004, telephone call from Mr. Callaham to Mr. Bryant and the November 17, 2004, follow-up e-mail as evidence of Mice Direct's "attempt[] to convince [Rodentpro.com] to engage in price fixing and collusion," and concludes that these communications, coupled with Mice Direct's use of "Plaintiff's trademark in national trade publications that enter Indiana," are evidence of Mice Direct's "systematic attempt to inflict injury upon [Rodentpro.com] in Indiana." (Plaintiff's Response at 7-8).

Rodentpro.com misapprehends the holding in *Panavision*. The *Panavision* court found specific jurisdiction over Toeppen because (1) Toeppen's use of Panavision's

7

trademarks and his attempt to extort money from Panavision in exchange for the domain names at issue directly related to the trademark claim Panavision asserted against Toeppen, and (2) Toeppen's tortious conduct had the effect of injuring Panavision in California "as he knew it likely would." By contrast, Mice Direct's contacts with Rodentpro.com – i.e., the November 16, 2003 telephone call and November 17, 2003 e-mail – do not relate to the trademark/unfair competition claims asserted in Rodentpro.com's Complaint. Rather, those communications relate to Mr. Callaham's belief that Rodentpro.com was selling "laboratory surplus" rodents at below-market prices while failing to inform its customers of the same.

Thus, the court is left with Rodentpro.com's unsubstantiated allegation that Mice Direct includes the term "RODENTPRO.COM" in the advertisements it places in national trade publications.[2] Assuming this to be true, an advertisement in a national trade magazine(s), without more (such as evidence that Indiana residents subscribe to the magazines at issue), does not amount to purposeful contact with Indiana that satisfies the Due Process Clause. *Hall's Specialties, Inc. v. Schupbach*, 735 F.2d 214, 216 (7th Cir.1985) (no minimum contacts where seller of defective product advertised product in forum state magazine and sold the product to resident in that state); *see also Recycling Sciences Int'l, Inc. v. Soil Restoration and Recycling L.L.C.*, 2001 WL 289868 (N.D. Ill. 2001); *Fluid Mgmt.*

---

[2] In its reply brief, Mice Direct noted that Rodentpro.com failed to cite any evidence that Mice Direct included the mark "RODENTPRO.COM" in any national trade magazines. In its surreply brief, Rodentpro.com took issue with this claim, and noted for the record that such evidence was attached to the Affidavit of Kevin Bryant, filed in May 2006 in support of its Motion for Preliminary Injunction. The advertisements at issue comprise two classified advertisements placed in the October 2005 issue of Reptiles Magazine, and two much larger advertisements in the annual issue of Reptiles USA Magazine. In those advertisements, Mice Direct claims, "We're Real Rodent Pros!" Because the court struck Rodentpro.com's surreply brief, the court does not include this in the body of its Entry.

*Ltd. P'ship v. H.E.R.O. Indus., Ltd.*, 1997 WL 112839 (N.D. Ill. 1997).  *Compare Logan Prods. v. Optibase, Inc.*, 103 F.3d 49, 53 (7th Cir. 1996) (advertisement in a national trade magazine, newsletters to forum state residents, and distributor based in the state all evinced an intent to intentionally serve the forum state's market).

Having found no personal jurisdiction over Mice Direct, the court need not consider Mice Direct's alternative motion to transfer venue.

## V.   Conclusion

For the reasons explained above, the court finds it lacks personal jurisdiction over Mice Direct.  Accordingly, Mice Direct's Motion to Dismiss for Lack of Personal Jurisdiction is **GRANTED**.

**SO ORDERED** this 12th day of February 2007.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Constance Regina Lindman
OVERHAUSER LAW OFFICES LLC
crlindman@sbcglobal.net

Mark F. Warzecha
BOWERS HARRISON LLP
mfw@bowersharrison.com

Paul B. Overhauser
OVERHAUSER LAW OFFICES
poverhauser@overhauser.com